**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

MALCOLM ROGERS                                                                                          PLAINTIFF

v.                                                    NO. 4:07CV01159 JLH

ENTERGY ARKANSAS, INC.                                                                          DEFENDANT

**OPINION AND ORDER**

Malcolm Rogers brought this action against Entergy Arkansas, Inc., alleging employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Entergy filed a motion for summary judgment. For the following reasons, summary judgment is granted in favor of Entergy on Rogers's claims for a hostile work environment and retaliation.

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). A genuine issue for trial exists only

if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

**I.**

The following pertinent facts are undisputed. Rogers transferred to Entergy's Mass Customer Accounting Services (MCAS) Department in March 2005. Shortly thereafter, his co-worker, Ayona Cunningham, began behaving in a manner Rogers deemed to be unprofessional. Rogers claims that Cunningham sang and danced flirtatiously, touched his arm and back in a playful manner, and complimented his abilities as a "handy man." Rogers did not report this behavior at the time because he did not then believe that her behavior amounted to harassment. Rogers spoke with Marsha Jordan, a co-worker with no supervisory authority, about Cunningham's behavior, but he did not indicate to Jordan that Cunningham's conduct was a problem. Under Entergy's EEO and Harassment Prevention Policies, Entergy employees must report suspected discrimination or harassment to Entergy's Ethics Hotline. Rogers had received training on Entergy's policies, including the Ethics Hotline, at some point in the first few months of his employment with MCAS.

On October 3, 2005, Cunningham and Rogers had a dispute regarding a work procedure and related email exchange. Cunningham reported this dispute to MCAS Supervisor Paul Henson. Henson then met with both Cunningham and Rogers, during which time Rogers did not mention any

problems of sexual harassment by Cunningham. Rogers had daily opportunities to report sexual harassment to Henson but never reported any such misconduct. Because of continuing difficulties between Cunningham and Rogers, Henson eventually directed that neither were to seek advice from the other and that they communicate through Jordan if necessary. Rogers agreed to Henson's resolution.

On or around November 4, 2005, Rogers gave Jordan a document titled "Goals, Objectives and Objections," in which Rogers addressed matters in the MCAS Department that he thought needed improvement. In that document, which bears Rogers's signature, Rogers stated that he was choosing to address the issue of sexual harassment "in house" rather than to abide by Entergy's policies and procedures. Rogers alleges that the document was altered to include that statement. He has promised to produce the original document but has failed to do so as of yet.

Around November 2005, Rogers began having disputes with Jordan after he informed Henson that some employees were using office equipment for personal use. Jordan allegedly stated that Rogers was "hoarding work like any man would do" and was a "stupid old man." Rogers did not report Jordan's statements until a conversation with Henson one year later.

Rogers has admitted accessing co-workers' computers without permission from them or Henson. Henson reprimanded him for this conduct in August 2006. Rogers wrote a memorandum to Jordan on August 11, 2006, discussing work disputes between them, and he copied Henson on the memorandum. The memorandum did not allege sexual harassment by Jordan or a sexually hostile work environment.

Henson met with Rogers on August 15, 2006, and Rogers informed Henson of Cunningham's alleged sexual harassment. Henson then called Entergy's Ethics Hotline for Rogers to make his

mandatory report of sexual harassment. Rogers met with Entergy Human Resource Manager Jim Robbins on August 22, 2006, regarding his report with the Ethics Hotline, but Rogers indicated he did not wish to proceed further with his complaint. Rogers's complaint with the Ethics Hotline and the information he provided to Robbins related to allegations of harassment only by Cunningham, not Jordan.

On August 21, 2006, Rogers interviewed with Henson for a full time position in the MCAS Department. Henson hired another candidate to fill that position.

On October 19, 2006, Rogers notified Robbins in a memorandum that Cunningham had made a derogatory comment directed at him. Robbins met with Rogers to discuss the incident. That same day, Henson emailed Cunningham and Rogers, informing them of the opportunity to relocate work stations depending on who first responded. Rogers responded before Cunningham, telling Henson that he would adjust to his decision. Rogers filed a grievance but did not directly object to the relocation.

Cunningham filed an Ethics Hotline complaint against Rogers in November 2006, alleging sexual harassment. Robbins then met with both Cunningham and Rogers on November 14, 2006. Cunningham and Rogers both signed a memorandum prepared by Robbins, outlining each others' allegations and notifying them that both were being put on notice that their behavior was inappropriate. The memorandum also warned that any future inappropriate behavior would result in disciplinary action.

On December 4, 2006, Rogers was suspended for three days for reasons that Henson described in a memorandum dated December 7. Rogers has admitted that he improperly forwarded a chain letter email, and he admitted in deposition testimony that he worked on co-workers'

computers without permission from them or Henson. Rogers disputed the other reasons for his suspension, including excessive personal phone calls according to the call log on his phone; failure to perform assigned work per Entergy's tracking system; falsification of status reports; lack of focus on quality work; and tardiness to work and failure to perform assigned tasks. Rogers admitted in deposition testimony that he had no direct knowledge regarding Henson's motivation for suspending him.

On March 15, 2007, Henson reprimanded Rogers in writing for using Entergy's company logo without authorization and for sending an unauthorized document outside of Entergy. Rogers attached the document, a training proposal, in an email to Henson and another email address: morganandfranco@aol.com. Rogers admitted to fabricating the email address and lying to Henson about its validity, initially telling Henson that the address owners were personal consultants.

Rogers filed his Charge with the EEOC on May 23, 2007, alleging sexual harassment and retaliation, and received his notice of right to sue on August 29, 2007. Rogers's EEOC charge did not allege that was denied a promotion due to his sex. Rogers has admitted that neither Cunningham nor Jordan harassed him after November 2006. The only conduct relating to Cunningham after November 2006 was a conversation between Cunningham and another co-worker, not directed at Rogers. The most recent incident pertinent to this action occurred on April 29, 2008, when Henson disciplined Rogers for improperly processing work tasks. Rogers did not contest the disciplinary action and admitted that he did not consider it to be retaliatory in nature.

## II.

Rogers's claim of sexual harassment is barred by the applicable statute of limitations. Under 42 U.S.C. § 2000e-5, a claimant must file a charge with the EEOC within 180 days after the alleged

unlawful employment practice occurred. *Adams v. Cal-Ark Int'l Inc.*, 159 F. Supp. 2d 402, 407 (E.D. Tex. 2001) ("Arkansas is a non-deferral state, and therefore, a plaintiff that is subjected to employment discrimination in Arkansas has 180 days from the date of the alleged unlawful employment action to file a charge with the EEOC."). Conduct occurring prior to the 180-day period can be grounds for suit only when the conduct is part of a continuing systematic or serial violation and when an act of harassment occurred within the 180-day period that forms a sufficient nexus with the conduct before that period. *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999). Here, Rogers filed his EEOC charge on May 23, 2007, meaning that some act of harassment must have occurred after November 23, 2006. Rogers has submitted no evidence that he was harassed by Jordan or Cunningham after that date. The only allegedly harassing conduct occurring after November 23, 2006, related to comments between Cunningham and another female employee. Rogers overheard these conversations, but they were not directed at him, and he never reported them as incidents of sexual harassment. Even if this latter conduct had been directed at him, Rogers has not shown how this conduct forms a sufficient nexus with the conduct occurring prior to the 180-day period. Therefore, Rogers's claim of sexual harassment is time barred.

Even if Rogers's claims were not time barred, he has failed to establish a prima facie case of a hostile work environment. To establish a prima facie case of a hostile work environment, a plaintiff must show: 1) that he was a member of a protected group; 2) the occurrence of unwelcome harassment; 3) a causal nexus between the harassment and his membership in a protected group; 4) that the harassment affected a term, condition, or privilege of employment; and 5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Vajdl v. Mesabi Academy of KidsPeace, Inc.*, 484 F.3d 546, 550 (8th Cir. 2007). Claims of

hostile work environment require a high evidentiary showing that the workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993)).

Rogers has failed to allege facts sufficient to support at least two elements of the prima facie case for a hostile work environment. First, Rogers has not demonstrated that the alleged harassment affected a term, condition, or privilege of employment. The plaintiff must show that a reasonable person would find the environment hostile and that the victim actually perceived it as hostile. *Duncan v. General Motors Corp.*, 300 F.3d 928, 934 (8th Cir. 2002). To determine whether the conduct was sufficiently severe or pervasive, a court must consider the totality of the circumstances, including the frequency of the conduct; its severity; whether the conduct was physically threatening or humiliating, rather than a mere offensive utterance; and whether it interfered with the employee's work performance. *Id.* (citing *Harris*, 510 U.S. at 23). The alleged conduct must be so severe and pervasive so as to permeate the workplace with discriminatory intimidation, ridicule, and insult. *Id.* (quoting *Harris*, 510 U.S. at 21).

In *Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021 (8th Cir. 2004), the plaintiff's station manager asked her out every day for several weeks, commented to other employees outside her presence that she was "hot," and called her at home on one occasion around 1:00 a.m. to invite her to a concert. *Henthorn*, 359 F.3d at 1024-25. After his offers were rejected, he allegedly criticized and yelled at her in front of other employees and made negative changes to her schedule and assignments. *Id.* at 1025. There, the court affirmed summary judgment in favor of the employer, stating that the manager's actions were inappropriate, immature, and unprofessional, but that "they

did not cross the high threshold required to support a claim of sexual harassment." *Id.* at 1027-28. In *Duncan v. General Motors Corp.*, 300 F.3d 928 (8th Cir. 2002), the supervisor's conduct was far more egregious, and the harassment was far more severe and pervasive than here. *Id.* at 932. The court stated that the supervisor's actions were "boorish, chauvinistic, and decidedly immature," but that they "did not show a sexually harassing hostile work environment sufficiently severe or pervasive so as to alter the conditions of [the plaintiff's] employment." *Id.* at 935.

Here, Rogers has alleged that a co-worker, Cunningham, suggestively flirted with him, playfully touched his arm and back, danced and sang in the workplace, and stated she wanted to take him home with her. Rogers did not report the conduct for another year, admitting that he did not believe it to be harassment at the time. He also alleges that Jordan called him a "stupid old man" and stated that he "hord[ed] work like any man would do." Although the actions of Cunningham and Jordan may have been immature, inappropriate, and offensive, they do not amount to severe and pervasive conduct that affected a term, condition, or privilege of Rogers's employment under controlling Eighth Circuit precedent.

Second, Rogers has not shown that Entergy failed to take prompt and effective remedial action. An employer may be directly liable for harassment by a non-supervisory co-worker if the employer knew or should have known of the conduct and failed to take proper remedial action. *Dyhne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 987 (8th Cir. 1999). Rogers has alleged no facts supporting the argument that Entergy failed to take prompt and effective remedial action on harassment complaints made by Rogers. Rogers did not report Cunningham's allegedly harassing conduct for over one year. When he did report Cunningham's actions to his supervisor, his supervisor immediately placed a call to Entergy's Ethics Hotline on behalf of Rogers. Subsequent

to his Ethics Hotline complaint, in a meeting with Entergy's human resource manager, Rogers indicated he did not wish to proceed further with his complaint against Cunningham. Rogers apparently never reported any incidents of sexual harassment by Jordan. Therefore, Rogers has failed to establish the fifth element of the prima facie case for a hostile work environment. For the foregoing reasons, summary judgment is granted in favor of Entergy on Rogers's claim of a hostile work environment.

### III.

Rogers's claim of retaliation also fails as a matter of law. To establish a prima facie case of retaliation, the plaintiff must show: 1) he engaged in protected conduct; 2) reasonable employees would have found the challenged retaliatory action materially adverse; and 3) the materially adverse action was causally linked to the protected conduct. *Weger v. City of Ladue*, 500 F.3d 710, 726 (8th Cir. 2007). If the plaintiff establishes a prima facie case for retaliation, the burden shifts to the defendant to show some legitimate non-retaliatory reason for the adverse action, and the plaintiff would then have the burden of showing that any stated non-retaliatory reason was a mere pretext for retaliation. *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1147-48 (8th Cir. 2008).

Rogers has admitted to multiple policy violations, including working at other employees' computers without authorization and improperly forwarding a chain email. Regarding the relocation of Rogers's work space, Rogers indicated to Henson that he was amenable to whatever decision Henson reached in resolving the dispute between Rogers and Jordan. With respect to Rogers's suspension, Henson's decision to suspend him came four months after Rogers's report to the Ethics Hotline. In addition to the multiple policy violations, Rogers has admitted that he had no knowledge of Henson's motivations for suspending him. Rogers has presented no evidence of a direct causal

connection between his protected activity and his suspension or relocation. Even if he could establish a prima facie case of retaliation, Rogers has not shown that any adverse action was a mere pretext for retaliation. Entergy has shown legitimate non-retaliatory reasons for Rogers's relocation and suspension, namely, his violations of Entergy policies and apparent willingness to relocate his work space to a different location. Because Rogers has failed to establish a prima facie case for retaliation, and because he has presented no evidence that Entergy's proposed legitimate reasons for its actions were a mere pretext for retaliation, summary judgement is granted in favor of Entergy on Rogers's claim for retaliation.

### IV.

Finally, Rogers's complaint alleges that he did not receive a promotion due to his sex. Rogers's charge of discrimination with the EEOC alleges only sexual harassment and his suspension, but the charge is silent as to a denial of promotion. Rogers has failed to exhaust his administrative remedies by failing to allege in his EEOC charge that he was refused a promotion because of his sex. Therefore, Rogers's claim for wrongful dismissal is dismissed without prejudice.

### CONCLUSION

For the reasons stated above, judgment will be entered in favor of Entergy Arkansas, Inc., on all claims. The complaint of Malcolm Rogers will be dismissed with prejudice.

IT IS SO ORDERED this 19th day of September, 2008.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE